IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 13 C 6992 |
| ) | |
| STEPHEN L. ROGERS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

A jury found Stephen Rogers guilty on three charges of sex offenses involving minors and acquitted him on a fourth charge. The Court sentenced Rogers to concurrent prison sentences of ten years on Count 2, fifteen years on Count 3, and twenty-five years on Count 4. The Seventh Circuit affirmed Rogers's conviction on Counts 2 and 4 but reversed on Count 3. *United States v. Rogers*, 474 F. App'x 463 (7th Cir. 2012).

Rogers has filed a motion under 28 U.S.C. § 2255 asking the Court to vacate his remaining convictions and sentences. He alleges that he received ineffective assistance of trial and appellate counsel. Rogers has also requested an evidentiary hearing to further develop his claims. For the reasons stated below, the Court denies Rogers's motion and his request for an evidentiary hearing.

### Background

On January 30, 2008, a grand jury returned a second superseding indictment

charging Rogers with four counts of sex offenses involving minors.  Count 1 charged Rogers with attempting to entice a minor to engage sexual activity, in violation of 18 U.S.C. § 2422(b).  Count 2 charged Rogers with using the Internet to transfer obscene material to a minor under the age of sixteen, in violation of 18 U.S.C. § 1470.  Count 3 charged Rogers with knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A).  Count 4 charged Rogers with employing, using, persuading, inducing, and enticing a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, in violation of 18 U.S.C. § 2251(a).

Counts 1 and 2 involved an undercover police officer who had posed as a thirteen-year old girl in interactions with Rogers.  Counts 3 and 4 involved an actual victim, a girl named Andrea who was fourteen years old at the relevant time.  Both the undercover police officer and Andrea testified at trial about their interactions with Rogers.  The government also presented e-mails that Rogers had exchanged with the officer and with Andrea.  The evidence showed that Rogers e-mailed the officer a sexually explicit photo of himself and that he had pressured Andrea to take and send him sexually explicit photos of herself via AOL Instant Messenger, where he used the screen name, "Hotthockey27."

On July 22, 2010, a jury found Rogers not guilty on Count 1 and guilty on Counts 2, 3, and 4.  The Court later denied Rogers's motion for judgment of acquittal or for a new trial.  Rogers later filed a motion for a new trial based on newly discovered evidence.  The Court denied this motion as well. In February 2011, the Court held a sentencing hearing and imposed concurrent prison sentences of ten years on Count 2,

fifteen years on Count 3, and twenty-five years on Count 4.

On appeal, Rogers argued that: 1) the image on which Count 2 was based did not satisfy the legal definition of obscenity; 2) the Court should have severed Counts 3 and 4 from Counts 1 and 2 for purposes of trial; and 3) the Court erred in omitting a knowledge element from the jury instructions for Counts 3 and 4. The Seventh Circuit affirmed Rogers's convictions on Counts 2 and 4 but reversed his conviction on Count 3 and ordered a new trial. *United States v. Rogers*, 474 F. App'x 463 (7th Cir. 2012). On remand, the government dismissed Count 3. Because the Court had sentenced Rogers to a twenty-five year prison term on Count 4, the dismissal of Count 3 did not change the overall length of his sentence. On October 1, 2012, the U.S. Supreme Court denied Rogers's petition for writ of certiorari.

On September 30, 2013, Rogers filed a motion under 28 U.S.C. § 2255 seeking to vacate his convictions and sentences on Counts 2 and 4. Rogers asserts that his trial counsel rendered ineffective assistance by failing to: 1) challenge the sufficiency of the evidence on Count 4 at trial and on appeal; 2) object at trial and on appeal to allegedly improper jury instructions for Count 4; and 3) challenge the ten-year sentence on Count 2 at trial and on direct appeal. The Court notes that the same counsel represented Rogers both on trial and on direct appeal.

## Discussion

A defendant is entitled to relief under 28 U.S.C. § 2255 only in cases involving "an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013). In this case, Rogers contends his lawyers

3

rendered ineffective assistance of counsel at trial and on appeal. Under the Sixth Amendment, "all defendants facing felony charges are entitled to the effective assistance of competent counsel." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (internal quotations omitted). *See also Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) ("The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.").

To determine whether a defendant's right to effective assistance counsel was violated, the Court applies the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, the defendant establishes ineffective assistance of trial or appellate counsel by demonstrating that: 1) his attorney's performance "fell below an objective standard of reasonableness" and that 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Courts entertain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the Court considers the totality of evidence in determining whether the defendant was prejudiced by counsel's actions or inaction. *Id.* at 689, 695. Thus the Court's review of counsel's performance is "highly deferential," and it need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 689, 697.[1]

---

[1] Rogers spent a good deal of time in his opening brief arguing that his claims were not procedurally defaulted. The government, however, did not argue otherwise in his response. The Court agrees that there is no issue of procedural default and thus does not address Rogers's arguments in this regard.

4

### A. Failure to challenge sufficiency of evidence on Count 4

Count 4 charged that Rogers "employed, used, persuaded, induced, and enticed a minor under the age of eighteen . . . to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," in violation of 18 U.S.C. § 2251(a). At trial, the government offered testimony by Andrea, the minor who was the subject of Count 4, that Rogers repeatedly asked her to take sexually explicit photos of herself even after she indicated that she did not want to do so; that Rogers's nagging caused her to take two sexually explicit photos of herself; and an e-mail she sent to Rogers, which attached one of these photos and stated, "Here. I hope you [sic] happy" Trial Tr. 391.

Rogers argues that his counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence to convict him on Count 4. He contends that this Court or the court of appeals would have vacated his conviction had it been presented with the opportunity to do so. Thus to assess the performance of Rogers's counsel, the Court examines the strength of the evidence against him on Count 4.

#### 1. Inducement to send vs. inducement to produce

Rogers says that his strongest argument that the government's evidence was insufficient is that the government proved, at most, that he induced Andrea to send him sexually explicit photos. Section 2251(a), he argues, is limited to production of child pornography; it does not cover inducing a minor "'to *send* . . . pornographic 'self-portraits.'" Rogers Opening Br. at 5 (quoting *United States v. Broxmeyer*, 616 F.3d 120, 126-127 (2nd Cir. 2010)).

Rogers suggests that he should prevail on this argument because the government ignores it completely. "Given that the production v. sending argument is the Petitioner's best . . . yet ignored entirely by the Government, this Court can only take the Government's silence as a tacit admission that the Petitioner's argument is legally correct . . . . the issue has now been forfeited." Rogers Reply at 4. It is true that the government does not discuss *Broxmeyer* in its reply. But that does not mean that the government ignored or overlooked the point. In summarizing the evidence, the government specifically noted that it showed that Rogers "specifically asked Andrea to take pictures of her breasts and genitalia"; that he "kept 'nagging' her for them" even after she said she did not want to take such pictures; and that she took the pictures that Rogers had been asking for so that he would stop asking. Gov't Resp. at 3. And in the argument section of its brief, the government said, citing this same evidence, that "[c]ontrary to [Rogers's] argument, there was ample evidence at trial proving that [he] persuaded Andrea to produce the picture of her genitalia and breasts—Andrea's testimony." *Id.* at 15.

To support his ineffective assistance/sufficiency of the evidence claim, Rogers relies heavily on *Broxmeyer*. In that case, the Second Circuit held that the government had adduced insufficient evidence to sustain a conviction under 18 U.S.C. § 2251(a). The court's holding turned on the fact that there was no evidence to indicate that the pictures were taken at the defendant's urging. *Broxmeyer*, 616 F.3d at 126 ("Photos 1 and 2 were taken in one of these three periods, but as to when—and whether they were taken before or after he solicited photos of her—one can only guess."). The previously-quoted statement by the court about so-called self-portraits was made to take note of

6

the fact that the photos in *Broxmeyer* were taken by the minor and thereby distinguished the case from an earlier one in which the defendant took the pictures himself. *Id.*

The Court agrees with the government that there was, in fact, evidence sufficient to show that Rogers urged Andrea to produce, and not just send, sexually explicit pictures of herself. In fact, this is exactly what Andrea stated during her testimony at trial:

> Q: Now, you mentioned that Hotthockey asked you to take pictures of your breasts and your vagina; is that right?
>
> A: Yes
>
> Q: Did you want to take those pictures?
>
> A: No.
>
> Q: Did you tell Hotthockey that you didn't want to take those pictures?
>
> A: Yes.
>
> Q: Did he accept -- did Hotthockey accept that answer?
>
> A: No.
>
> Q: What did he do?
>
> A: He -- Hotthockey kept nagging me for the pictures.
>
> Q: By 'nagging,' what do you mean?
>
> A: Kept asking me for them.

Trial Tr. 389. For this reason, Rogers's counsel cannot be faulted for failing to contend that there was insufficient evidence that Rogers induced Andrea to produce, and not simply to send, sexually explicit pictures of herself.

### 2. Sufficiency of Andrea's testimony to convict

Rogers also argues that his counsel should have challenged the sufficiency of the evidence on Count 4 on the ground that it consisted mainly of Andrea's allegedly unclear and incredible testimony. Rogers points to an August 13, 2007 interview between FBI agents and Andrea, during which she failed to disclose that Rogers had asked her to take or send him sexually explicit photos of herself, did not mention his Instant Messenger screen name (as distinguished from his e-mail address), and could not recall why she took or sent the sexually explicit photos. Rogers also points to the absence of any requests to take or send him sexually explicit photos in the e-mails that he sent Andrea. Rogers concludes that "no rational juror could ignore the emails . . . ignore Andrea's statements to the FBI . . . and instead choose to believe Andrea suddenly believed at trial that [Rogers], a man she never met, made such requests . . . ." Rogers Opening Br. at 7-8.

The record reflects that Rogers's counsel did make these points at trial, during both cross-examination of Andrea and closing arguments (if not through a post-trial motion). The following exchange between one of Rogers's attorneys and Andrea provides an example: "Q: Now, Andrea, these e-mails that we've reviewed here today, they don't include a request for any particular photograph, do they? A: No." Trial Tr. 416. Rogers's other attorney reminded the jury during closing argument that an FBI agent "asked [Andrea] specifically why, and she couldn't remember. It wasn't until she had been interviewed over and over again by the government, by the prosecutors in this case, that she then changed her story." *Id.* at 513. The attorney concluded that the "government has not proved Mr. Rogers [guilty] beyond a reasonable doubt." *Id.* 515-

16. In short, in presenting evidence and making arguments to the jury, Rogers's counsel challenged the sufficiency of the evidence to convict him on Count 4 at trial on the very grounds he advances in his briefs on the section 2255 motion.

To be sure, Rogers's attorneys did not challenge the sufficiency of the evidence via a post-trial motion for judgment of acquittal. Nor did they do so on appeal. Those are the inactions that Rogers challenges here. The Court considers these points together because they involve the same underlying standard. Both post-trial and on direct appeal, Rogers would have faced a high bar in showing that he had been convicted on insufficient evidence. "When reviewing a challenge to the sufficiency of the evidence supporting a verdict, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Harris*, 567 F.3d 846, 850 (7th Cir. 2009). *See generally Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In particular, when a court reviews a jury's verdict, "In the absence of truly exceptional circumstances, [it does] not second-guess the jury's credibility determinations." *United States v. Dean*, 574 F.3d 836, 842 (7th Cir. 2009). Neither this Court nor the court of appeals would have re-evaluated Andrea's credibility unless it was "so improbable on its face that no reasonable fact-finder could accept it." *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir. 1994). "This is true even if the evidence is totally uncorroborated and comes from an admitted liar, convicted felon, large-scale drug dealing, paid government informant." *Id* (internal quotations omitted).

Reasonable persons could have had different views of Andrea's credibility, but any challenge by Rogers's lawyers would have fallen short of the high threshold for

9

overturning his conviction. Andrea's account reasonably could be viewed as that of a young person who had gone through a disturbing experience and was being asked to disclose embarrassing personal details. The allegedly impeaching FBI interview occurred in the presence of Andrea's mother, which a reasonable juror could have regarded as a reason why Andrea did not provide a motivation for taking the sexually explicit photos. Ultimately, Andrea's account meshed with the other evidence regarding her interactions with Rogers, including that he was interested in a sexual relationship with her and communicated with her relatively frequently online, whether via e-mail or Instant Messenger. And by way of comparison, Andrea's testimony had fewer inherent problems than the testimony considered in *United States v. Smith*, 393 F.3d 717 (7th Cir. 2004), in which the court accepted as sufficient the testimony of a convicted felon who received a sentence reduction in return for the testimony because it was not physically impossible for him to have witnessed the offense in question. *Id.* at 719.

In reviewing the claims that Rogers's counsel did raise on direct appeal, the Seventh Circuit stated that the "record below is unclear as to whether Rogers expressly asked Andrea to send additional pictures of herself. Andrea, in her testimony, states both that he did request additional pictures and that he did not." *United States v. Rogers*, 474 F. App'x 463, 465 (7th Cir. 2012). Rogers takes this as an indication that the court would have questioned Andrea's credibility had Rogers challenged the sufficiency of the evidence. In context, the statement was simply an acknowledgment of inconsistent testimony, not an indication that Andrea's testimony that supported the jury's verdict reached the high level of improbability required to overturn a jury's verdict.

For these reasons, it was well within the range of reasonable professional assistance for Rogers's counsel to opt not to argue insufficiency of the evidence via a post-trial motion or on direct appeal. Counsel reasonably could have regarded this as a losing argument and therefore decided to focus on issues with a reasonable chance for success. And for essentially the same reason, Rogers cannot establish a reasonable probability that the outcome of his direct appeal would have differed but for counsel's decision not to challenge the sufficiency of the evidence on Count 4.

Rogers also contends that the issues counsel raised on appeal were weaker than the sufficiency-of-evidence issue regarding Count 4. He states that "[w]hile there was some merit in raising the first two issues, ultimately the Seventh Circuit rejected these arguments, and thus the reasonable doubt issue in this case was clearly more meritorious because, if this Court accepts the Petitioner's position, it would have actually succeeded." Rogers Reply at 10. But as the Court has concluded, the claim was not a winning argument.

**B.     Failure to object to elements instruction regarding Count 4**

Count 4 of the indictment charged Rogers with having "employed, used, persuaded, induced, and enticed" a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, in violation of 18 U.S.C. § 2251(a). The jury instructions for Count 4 stated that to find Rogers guilty, the government had to prove (among other things) that he "employed, used, persuaded *or coerced*" a minor to take part in sexually explicit conduct. Rogers Ex. D at 21 (emphasis added). In short, the jury instructions permitted the jury to convict him if it found he had coerced Andrea, a term not used in the indictment.

11

Rogers maintains that this constructively amended the indictment and argues that counsel should have objected to the jury instructions on that basis at trial and on direct appeal.

"A constructive amendment to an indictment . . . occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011) (internal quotations omitted). "Because a constructive amendment violates the Fifth Amendment . . . a conviction under an amended indictment should almost always be reversed." *United States v. Crowder*, 588 F.3d 929, 938 (7th Cir. 2009).

But not all such changes result in an impermissible constructive amendment. The difference between mere "variances" on the one hand and constructive amendments on the other "essentially is between the situation in which different evidence supports the charged crime [as with a variance] and that in which the evidence supports a crime other than that charged [as with an amendment]." *United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007) (internal quotations omitted). *See also United States v. Burge*, 711 F.3d 803, 814 (7th Cir. 2013) (finding that particular jury instructions did not constructively amend the indictment in part because they did not affect the evidence the jury would have relied on to hold the defendant liable).

It was objectively reasonable for Rogers's counsel to regard the use of the phrase "or coerced" in the jury instructions as a mere variance rather than a constructive amendment of the indictment. In evaluating the issue, it is worth bearing in

12

mind that including "coercion" as a basis for the charge did not make it any easier to convict Rogers. The ordinary meaning of "coerce" is "to bring about by force or threat." *Merriam-Webster's Collegiate Dictionary*, 222 (10th ed. 1999). That would have been a far more difficult burden for the government to meet than simply proving that Rogers "persuaded, induced, [or] enticed" Andrea to produce sexually explicit photographs, an indisputably appropriate and sufficient basis to convict him on the charge. And indeed, no evidence regarding coercion was offered at trial. Thus as in *Burge*, the arguably improper aspect of the jury instruction did not affect the evidence the jury relied on to convict Rogers, and it could not possibly have affected its judgment.

As the government argues in its response brief, the addition of "coerced" to the jury instructions in the present case is similar to the addition of "manufacturing" to the jury instructions in *United States v. Pigee*, 197 F.3d 879 (7th Cir. 1999). In *Pigee*, the court concluded that the addition of "manufacturing" and "or" to the jury instructions could not be considered a constructive amendment when the indictment was limited to "distributing and using" [cocaine]. *Id*. at 886-87. The court attributed its conclusion partly to the fact that the government never offered evidence at trial that the defendant had manufactured cocaine.

For these reasons, Rogers has not shown that his counsel's failure to object to the instruction prejudiced him.

**C.     Failure to challenge sentence on Count 2**

As indicated earlier, the Court sentenced Rogers to the statutory maximum of ten years on Count 2. The sentence was above the advisory Sentencing Guidelines range of fifty-seven to seventy-one months for that charge. Rogers contends that his counsel

13

should have challenged the sentence before this Court and on direct appeal because there is no basis in the record for an above-Guidelines sentence.

Contrary to Rogers's contentions, the sentencing transcript makes clear that the Court took into account several factors that warranted an above-Guidelines sentence on Count 2. These included: 1) the severity of the crime charged in Count 2; 2) the fact that Rogers had previously committed multiple crimes targeting minors, one of which involved an actual victim; 3) the fact that Rogers had served a sentence of incarceration in the past and then had re-offended; 4) the fact that he had been attending court-ordered meetings with a psychologist for several years but nonetheless re-offended; 5) the fact that he was already a registered sex offender; and 6) his chats and conversations with the undercover police officer posing as a thirteen-year old girl.

In reviewing a sentence, the court of appeals considers whether the district court committed any procedural or substantive errors. Examples of procedural errors include improper calculation of the Guidelines range; treating the Guidelines as mandatory; failure to consider the factors under 18 U.S.C. § 3553(a); imposing a sentence based on clearly erroneous facts; or failure to explain the sentence adequately. *See, e.g., United States v. Hill*, 645 F.3d 900, 905 (7th Cir. 2011). A substantive error involves imposition of an unreasonable sentence in light of the section 3553(a) factors. *See, e.g., United States v. Molton*, 743 F.3d 479, 484 (7th Cir. 2014).

Rogers appears to argue that the Court committed both a procedural error and a substantive error that counsel should have challenged. Specifically, he says that "there was no basis stated in the Record to justify a maximum sentence [on Count 2], outside the Guideline[s] range." Rogers Opening Br. at 13. This suggests that his contention is

both that the Court did not explain the sentence adequately—a procedural error—and that an above-Guidelines sentence was not substantively appropriate.

Prior counsel's failure to challenge the sentence on Count 2 on the basis of a procedural error did not amount to conduct that fell below an objective standard of reasonableness. There is no suggestion that the Court calculated the Guidelines range inappropriately or based the sentence on clearly erroneous facts. And any challenge based on the proposition that the Court did not explain the sentence adequately or did not deal with the significant arguments advanced by the defense would have been doomed to fail.

Under the law, "'after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.'" *United States v. Hodge*, 729 F.3d 717, 721 (7th Cir. 2013) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). These factors include:

> "the nature and circumstances of the offense and the history and characteristics of the defendant," . . . as well as several penological objectives: "to reflect the seriousness of the offense, ... promote respect for the law, and ... provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment . . . ."

*Id.* (quoting 18 U.S.C. § 3553(a)). A sentencing judge "need not address every § 3553(a) factor in checklist fashion, explicitly articulating its conclusions regarding each one." *Id.* The transcript of the sentencing hearing makes it clear that the Court considered the relevant factors, including the severity of the offenses Rogers had

15

committed, his history and characteristics, and the need to provide just punishment, promote respect for the law, and protect the public from Rogers. *See* Rogers Ex. H (sentencing transcript) at 30-36. A reasonable attorney easily could have concluded that the detailed explanation the Court gave was sufficient to make a post-sentencing or appellate challenge futile. *See, e.g., United States v. Helton*, 370 F. App'x 709, 712 (7th Cir. 2010) (finding judge's explanation of above-Guidelines sentence adequate); *United States v. Abbas*, 560 F.3d 660, 668 (7th Cir. 2009) (same).

The same is true regarding the substantive reasonableness of the sentence. On appeal, a reviewing court's "task is simply to assess whether the overall prison sentence imposed by the district court is reasonable in light of the justifications for that sentence." *United States v. Angle*, 598 F.3d 352, 359 (7th Cir. 2010). "[W]e will uphold an above guidelines sentence as long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for its sentence." *Molton*, 743 F.3d at 484 (internal quotations omitted). In *Molton*, the court upheld the district court's determination that a Guideline sentence was insufficient for a defendant who had two prior firearm offenses because the judge's concern that the defendant would recidivate was not unreasonable given the record. *Id.* at 485.

The same is true in this case. The Court did, to be sure, focus its comments regarding the offenses primarily on those committed against Andrea (who was present at the sentencing), but the Court also made specific reference to Rogers's online dealings with the undercover agent, which were the subject of Count 2. *See* Rogers Ex. H at 32. Beyond this, the Court took into account how each of the episodes at issue in the charges against Rogers fit in with his history, focusing on his recidivism and the

16

need to protect the public—specifically, young girls—from him. *See id.* at 33-35. In light of the deference given on appeal to the sentencing judge's determination that the relevant factors warranted the particular sentence, *see, e.g., Molton*, 743 F.3d at 486-87, counsel's determination not to appeal the sentence on Count 2 did not fall below an objective standard of reasonableness.

Rogers makes reference in his briefs to the fact that the Court, during the sentencing hearing, mistakenly stated that there was a ten-year *minimum* sentence on Count 2, as opposed to a ten-year *maximum* and, toward the end of the sentencing hearing, initially stated that it was imposing a fifteen-year sentence on Count 2. *See* Rogers Ex. H at 5 & 36. It was reasonable for counsel representing Rogers at the time to conclude that this error was insignificant and did not support a viable appellate challenge, particularly in light of the Court's extensive explanation in justification of the sentence. In addition, Rogers has failed to show that it is reasonably possible that the Seventh Circuit would have overturned the sentence on Count 2 and thus has not established the requisite prejudice.

## Conclusion

For the foregoing reasons, the Court denies Rogers's motion under 28 U.S.C. § 2255, as well as his request for an evidentiary hearing, and directs the Clerk to enter judgment denying Rogers's section 2255 motion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 21, 2014